# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

BRANCH BANKING AND TRUST COMPANY,                )
)
)
         Appellant,                )
)
   vs.                )
)
CREDITOR GROUP,                )
)
         Appellee.                )
_____)

Case No.: 2:14-cv-00926-GMN

**ORDER**

In this bankruptcy appeal, Appellant Branch Banking and Trust Company ("BB&T") seeks review under 28 U.S.C. § 158(a) and (b) of an Order of the United States Bankruptcy Court for the District of Nevada ("the Bankruptcy Court"), sustaining an objection filed by Appellee Creditor Group ("Creditor Group") to BB&T's proof of claim in the bankruptcy case of R&S St. Rose Lenders, LLC ("Debtor").  BB&T asks the Court to reverse the Bankruptcy Court's Order.  For the reasons explained below, the Bankruptcy Court's Order is reversed.

## I.    BACKGROUND

Both Debtor and R&S St. Rose LLC ("St. Rose") were formed in 2005 and are controlled by Saiid Forouzan Rad ("Rad") and R. Phillip Nourafchan ("Nourafchan") through their wholly-owned entities RPN, LLC and Forouzan, Inc. (State Court Findings ¶¶ 1–2, 9–10, ECF No. 7-9).  St. Rose was formed for the purpose of land-banking certain undeveloped real property on the corner of St. Rose Parkway and Spencer Road in Henderson, Nevada (the "Property"). (*Id.* ¶ 1).  Debtor was formed for the purpose of borrowing funds from individual lenders and then loaning those same funds to St. Rose. (*Id.* ¶ 2).

In order to finance the purchase of the Property, St. Rose obtained a $29,350,250.00 loan from BB&T's alleged predecessor in interest, Colonial Bank (the "2005 Loan"), which was

secured by a first-position deed of trust against the Property. (*Id.* ¶¶ 8, 11).  Shortly after the 2005 Loan, Rad and Nourafchan signed a promissory note in favor of Debtor for $12,000,000.00 ("Debtor's Promissory Note") secured by a second-position deed of trust against the Property ("Debtor's Deed of Trust"). (*Id.* ¶ 17).  In 2007, St. Rose obtained a second loan from Colonial Bank in the approximate amount of $43 million (the "2007 Loan"), which was used in part to pay off the 2005 Loan. (*Id.* ¶¶ 65–66; Construction Loan Agreement, Ex. 1 to Proof of Claim, ECF No. 7-4).  The 2007 Loan was secured by a new deed of trust against the Property ("Colonial's Deed of Trust"). (State Court Findings ¶ 65, ECF No. 7-9; Colonial's Deed of Trust, Ex. 3 to Proof of Claim, ECF No. 7-4).  However, because Debtor's Deed of Trust was not reconveyed at the closing of the 2007 Loan, Colonial's Deed of Trust was placed in second position against the Property behind Debtor's Deed of Trust. (State Court Findings ¶ 66, ECF No. 7-9).  St. Rose subsequently defaulted on both Debtor's Promissory Note and the 2007 Loan, and Debtor and Colonial Bank both moved to foreclose on the Property. (*Id.* 3:15–24, ¶¶ 125–26).

On July 1, 2009, Colonial Bank commenced an action in state court asserting that Debtor had improperly obtained priority for its deed of trust ahead of Colonial's Deed of Trust. (*Id.* 3:1–6).  Thereafter, Colonial Bank was placed in receivership with the Federal Deposit Insurance Corporation (the "FDIC"), and on August 14, 2009, BB&T entered into a Purchase and Assumption Agreement with the FDIC to assume many of the assets and liabilities of Colonial Bank. (Purchase and Assumption Agreement, Ex. A to Hicks Decl., ECF No. 7-1).  BB&T subsequently filed a Second Amended Complaint in the state court action, alleging six causes of action: (1) declaratory relief – contractual subrogation, (2) declaratory relief/quiet title – replacement, (3) equitable/promissory estoppel, (4) unjust enrichment, (5) fraudulent misrepresentation, and (6) civil conspiracy. (Sec. Am. Compl. ¶¶ 34–84, Ex. 8 to Proof of Claim, ECF No. 7-4).  BB&T's fraudulent misrepresentation and conspiracy claims are based

on the same alleged promise and agreement from Rad and Nourafchan that St. Rose would reconvey Debtor's Deed of Trust in order for Colonial's Deed of Trust to take first priority against the Property.  (*Id.* ¶¶ 63–73, 78–82).

On June 18, 2010, the state court entered a Findings of Fact and Conclusion of Law granting judgment for Debtor on BB&T's first four claims because "BB&T failed to meet[] its burden of proof to establish that the Colonial Bank loan, note and deed of trust at issue in this case were ever assigned to BB&T." (State Court Findings 6:23–7:10, ECF No. 7-9).  The state court order then goes on to state in its "Findings of Fact" that, *inter alia*, "[n]either Rad, Nourafchan, [St. Rose], nor [Debtor] ever represented or agreed to a reconveyance of the [Debtor's] Deed of Trust." (*Id.* ¶ 83).  Shortly thereafter, the state court granted BB&T's motion to voluntarily dismiss its fraudulent misrepresentation and conspiracy claims. (Order on Mot. to Dismiss, Ex. A to Resp. to Object., ECF No. 7-12).

BB&T appealed the state court decision, and on May 31, 2013, the Supreme Court of Nevada entered an Order of Affirmance finding that "the district court's decision to grant [Debtor]'s NRCP 52(c) motion after BB&T failed to carry its evidentiary burden to prove its ownership of the [2007] Loan was not clearly erroneous." (Order of Affirmance at 6, ECF No. 7-10).  On February 14, 2014, the Supreme Court of Nevada denied BB&T's request for *en banc* reconsideration, concluding that the lower court's "decision was not clearly erroneous because BB&T failed to satisfy its evidentiary burden to prove its ownership of the [2007] Loan." (*En Banc* Order at 3, ECF No. 7-11).

On April 4, 2011, during the pendency of BB&T's appeal before the Supreme Court of Nevada, St. Rose and Debtor each filed Chapter 11 bankruptcies. (Order on Object. 2:2–12, Ex. A to Not. of Appeal, ECF No. 1).  On July 27, 2011, BB&T filed a Proof of Claim in Debtor's bankruptcy in an unsecured amount of $38,539,707.47 for the fraudulent misrepresentation and civil conspiracy claims that were voluntarily dismissed from the state court action. (Proof of

1    Claim, ECF No. 7-4).  Creditor Group subsequently filed an Objection to BB&T's claim on

2    March 13, 2014 asserting that BB&T's claims were barred by *res judicata* under the state

3    court's Findings of Fact and Conclusions of Law. (Objection, ECF No. 7-2).  On June 3, 2014,

4    the Bankruptcy Court entered an Order sustaining Creditor Group's Objection and denying

5    BB&T's claim under the doctrine of issue preclusion[1] based upon the Findings of Fact in the

6    state court's order. (Order on Object., Ex. A to Not. of Appeal, ECF No. 1).  Relying on the

7    state court's finding that no misrepresentations had been made, the Bankruptcy Court held that

8    "[a] claim of fraudulent misrepresentation cannot exist if the alleged misrepresentation never

9    occurred," and "[a] conspiracy to commit a tort cannot exist if the alleged tort cannot be

10   shown." (*Id.* 13:5–7).  Therefore, "[t]he State Court's findings preclude BB&T from pursuing

11   the fraudulent misrepresentation and conspiracy theories on which [its claim] is based." (*Id.*

12   13:7–8).  This Order is now on appeal before this Court.

13   **II.**    **STANDARD OF REVIEW**

14       Pursuant to 28 U.S.C. § 158(a) and (b), federal district courts and bankruptcy appellate

15   panels, where applicable, have jurisdiction to hear appeals from final judgments of bankruptcy

16   judges.  "On an appeal the district court or bankruptcy appellate panel may affirm, modify, or

17   reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further

18   proceedings." Fed. R. Bankr. P. 8013.  "Findings of fact, whether based on oral or documentary

19   evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the

20   opportunity of the bankruptcy court to judge the credibility of the witnesses." *Id.*

21       "The bankruptcy court's findings of fact are reviewed for clear error, while its

22   conclusions of law are reviewed *de novo*." *In re JTS Corp.*, 617 F.3d 1102, 1109 (9th Cir.

23

---

24   [1] It is unclear from the Bankruptcy Court's Order whether it also held that claim preclusion bars BB&T's claim.
      However, because Creditor Group appears to concede in its Answering Brief that claim preclusion is not

25   applicable here, the Court will not address this issue. (Answering Brief 19:13–24:13, ECF No. 10); *see also Five
      Star Capital Corp. v. Ruby*, 194 P.3d 709, 713 n.27 (Nev. 2008) (noting that the requirement for claim preclusion
      of a valid judgment on the merits does not include cases dismissed without prejudice).

1    2010).  The Court reviews "the determination of whether issue or claim preclusion applies *de*

2    *novo* as mixed questions of law and fact in which legal questions predominate." *In re Cogliano*,

3    355 B.R. 792, 800 (B.A.P. 9th Cir. 2006) (internal quotations omitted); *see also Robi v. Five*

4    *Platters, Inc.*, 838 F.2d 318, 321 (9th Cir. 1988).

5    **III.    DISCUSSION**

6         In its Opening Brief, BB&T argues that the Bankruptcy Court erred in finding that the

7    state court's order bars its claims for fraudulent misrepresentation and civil conspiracy pursuant

8    to the doctrine of issue preclusion.  The Court agrees.

9         "Issue preclusion prevents relitigation of an issue decided in an earlier action, even

10   though the later action is based on different causes of action and distinct circumstances." *In re*

11   *Sandoval*, 232 P.3d 422, 423 (Nev. 2010).  In determining whether a claim should be barred by

12   issue preclusion based upon a state court decision, federal courts must look to the laws of the

13   state in which the prior judgment is entered. *Brennan v. EMDE Med. Research, Inc.*, 652 F.

14   Supp. 255, 266 (D. Nev. 1986) (citing *Hirst v. State of California*, 770 F. 2d 776 (9th Cir.

15   1985); *see also In re Cantrell*, 329 F.3d 1119, 1123 (9th Cir. 2003) ("28 U.S.C. § 1738 requires

16   us, as a matter of full faith and credit, to apply the pertinent state's collateral estoppel

17   principles.").  In Nevada, "the following factors are necessary for application of issue

18   preclusion: (1) the issue decided in the prior litigation must be identical to the issue presented

19   in the current action; (2) the initial ruling must have been on the merits and have become final;

20   (3) the party against whom the judgment is asserted must have been a party or in privity with a

21   party to the prior litigation; and (4) the issue was actually and necessarily litigated." *Five Star*

22   *Capital Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008) (internal quotations omitted).

23        The Bankruptcy Court determined that BB&T was precluded from bringing its claim

24   based upon various findings in the state court's Findings of Fact and Conclusion of Law which

25   held that no misrepresentations had been made concerning the reconveyance of Debtor's Deed

of Trust or the priority of the deeds of trust upon the Property. (Order on Object. 8:24–14:3, Ex. A to Not. of Appeal, ECF No. 1).  BB&T asserts that these state court findings regarding the occurrence of misrepresentations are dicta and are not issues that were actually and necessarily litigated. (Opening Brief 14:8–17:8, ECF No. 9).  Therefore, the state court's factual findings regarding the underlying misrepresentations should be given no preclusive effect. (*Id.*).

"A statement in a case is dictum when it is unnecessary to a determination of the questions involved." *City of Oakland v. Desert Outdoor Advertising, Inc.*, 267 P.3d 48, 52 (Nev. 2011) (internal quotations omitted).  This definition of dictum as a statement which is unnecessary to the determination of a case tracks with the fourth element for applying issue preclusion that an issue must have been "actually and necessarily litigated" to be precluded. *Compare id. with Frei ex rel. Litem v. Goodsell*, 305 P.3d 70, 72 (Nev. 2013) ("Whether the issue was actually litigated turns on whether the common issue was necessary to the judgment in the earlier suit.").  Accordingly, if the state court's factual findings are dicta, then they cannot be used to preclude BB&T from asserting its misrepresentation and conspiracy claims in Debtor's bankruptcy. *See Goodsell*, 305 P.3d at 72 ("Nevada law provides that only where 'the common issue was *necessary to the judgment in the earlier suit*,' will its relitigation be precluded.") (quoting *Univ. of Nevada v. Tarkanian*, 879 P.2d 1180, 1191 (Nev. 1994)); *see also Mullins v. State*, 294 S.W.3d 529, 535 (Tenn. 2009) ("Determinations of an issue or issues that are not necessary to a judgment have the characteristics of dicta and will not be given preclusive effect.") (citing Restatement (Second) of Judgments § 27 cmt. h (1982)).

Resolution of BB&T's claims before the state court was not dependent on the factual findings concerning the occurrence of the alleged misrepresentations because, regardless of the findings on the misrepresentations, BB&T's claims would still have been denied for lack of standing.  In its Findings of Fact and Conclusions of Law, the state court held that "BB&T failed to meet[] its burden of proof to establish that the Colonial Bank loan, note and deed of

trust at issue in this case were ever assigned to BB&T." (State Court Findings 6:23–7:10, ECF No. 7-9). The state court found that it was this failure to establish standing "which prompts the dismissal of BB&T's claims." (*Id.* 6:24). Accordingly, no factual findings on the merits of the underlying claims were necessary for the state court's denial of BB&T's claims and the factual findings that were made are dicta.

This conclusion is underscored by the fact that that the Supreme Court of Nevada's order only affirms the lower court's decision on whether BB&T presented sufficient evidence to establish standing and does not even mention the lower court's factual findings on misrepresentation in its analysis of the appeal. *See* (Order of Affirmance at 5–6, ECF No. 7-10). ("[T]he district court's decision to grant [Debtor]'s NRCP 52(c) motion after BB&T failed to carry its evidentiary burden to prove its ownership of the [2007] Loan was not clearly erroneous."). Likewise, the majority's order denying *en banc* reconsideration contains no discussion of the factual findings regarding the alleged misrepresentations, finding only that the lower court's decision that BB&T had failed to prove standing "was not clearly erroneous because BB&T failed to satisfy its evidentiary burden to prove its ownership of the [2007] Loan."[2] (*En Banc* Order at 3, ECF No. 7-11). Moreover, a finding that a party lacks standing necessarily means that the court lacks jurisdiction to rule on the merits of the underlying claims. *See Fleck & Associates, Inc. v. Phoenix, City of, an Arizona Mun. Corp.*, 471 F.3d 1100, 1103 (9th Cir. 2006) ("Because Fleck lacked standing to assert its customers' rights, the district court lacked subject matter jurisdiction over the claim and should have dismissed on that basis without discussing the merits."); *see also Oryem v. Nevada Dep't of Admin.*, No. 62197, 2013 WL 5613361, at *1 (Nev. Oct. 8, 2013) ("[A]ppellant lacks standing to appeal

---

[2] In a dissent to the majority's denial of *en banc* reconsideration, Justice Pickering notes that the lower court's holding that BB&T had failed to establish itself as Colonial Bank's successor-in-interest "did not establish the absolute priority of [Debtor's] note and deed of trust," but rather "it represented, at best, a decision that BB&T was not the real party in interest entitled to maintain this action." (*En Banc* Dissent at 8, ECF No. 7-11).

from the district court's order, and thus, this court lacks jurisdiction to entertain his appeal."). Accordingly, not only were the state court's findings regarding the existence of the alleged misrepresentations unnecessary to the determination of the case, but the court did not even have jurisdiction to make those findings. As a result, the state court's findings regarding whether the alleged misrepresentations ever occurred are dicta that cannot preclude BB&T from asserting its claim in Debtor's bankruptcy. *See Goodsell*, 305 P.3d at 72.

## IV.  CONCLUSION

**IT IS HEREBY ORDERED** that the order of the United States Bankruptcy Court for the District of Nevada is **REVERSED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall send a copy of this Order to the U.S. Bankruptcy Court, and shall thereafter close the case.

**DATED** this 30th day of March, 2015.

_____

Gloria M. Navarro, Chief Judge
United States District Judge